## IN THE UNITED STATES BANKRUPTCY COURT
### for the
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: Calvin Taylor, Jr., | : | CHAPTER 7 |
| Debtor | : | |
| Carisbrook Asset Holding Trust | : | NO.: 17-17534 JKF |
| Movant | : | |
| vs. | : | |
| Calvin Taylor, Jr. | : | 11 U.S.C. Section 362 |
| Debtor | : | |
| and | : | |
| Christine C. Shubert, Esq. | : | |
| Trustee | : | |

### DEBTOR CALVIN TAYLOR, JR.'S RESPONSE AND OBJECTIONS TO MOTION OF CARISBROOK ASSEET HOLDING TRUST FOR RELIEF FROM THE AUTOMATIC STAY UNDER SECTION 362

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.



FILED

FEB 2 1 2018

TIMOTHY McGRATH, CLERK
BY                          DEP. CLERK

8. Objected to and Denied. After reasonable investigation, answering Defendants is without knowledge or information sufficient to form a belief as to the truth of any factual averments of paragraph #8. Therefore, strict proof is demanded.

9. Objected to and Denied. Movant is not entitled to relief from the automatic stay as the same has provided protection from said Sheriff's Sale under Chapter 7. Furthermore, the property in issue has been listed for sale since May, 2017.

10. Objected to and Denied. After reasonable investigation, answering Defendants is without knowledge or information sufficient to form a belief as to the truth of any factual averments of paragraph #10. Therefore, strict proof is demanded.

11. On June 21, 2017, an offer to purchase the property in the amount of $180,000.00 was made. (See Exhibit #1 attached hereto.) At such time Debtor applied for the right to complete a short sale.

12. Debtor completed the application. However, RoundPoint Mortgage continued to ask for additional information. In fact, they often requested the same information more than once.

13. On July 10, 2017, RoundPoint Mortgage requested additional information which was forwarded to them promptly. (See Exhibit #2 attached hereto.)

14. Unfortunately, on or about August 222, 2017, RoundPoint representative, William Rodriguez, informed Debtor that additional information was needed, most of which was already submitted.

15. On August 28, 2017, Debtor faxed the information to RoundPoint Mortgage. (The cover letter and fax confirmation sheet indicating 20 pages are attached hereto collectively as Exhibit #3.)

16. Notwithstanding having received the information, on August 29, 2017, RoundPoint again asked for the same information. (A true and correct copy of the letter is attached hereto as Exhibit #4.)

17. Debtor again faxed the information to RoundPoint Mortgage on September 5, 2017. (See Exhibit #5.)

18. Two days before the scheduled Sheriff's Sale RoundPoint Mortgage had not postponed the Sheriff's Sale. Consequently, Debtor filed for Bankruptcy.

19. On October 6, 2017, Debtor secured a listing agent more familiar with real estate in the Germantown/Chestnut Hill area, Elfant Wissahickon Realtors. (See the listing agreement attached hereto as Exhibit #6.)

20. The property is being shown regularly and has attracted offers.

21. An offer was made for $200,000.00, but was withdrawn before finalized because buyer decided to invest in another real estate deal. (See Exhibit 7 attached hereto.)

22. The interests of Debtor and Mortgage Company are better served by allowing the process of selling the property on the open market to continue.

**WHEREFORE, Debtor prays that Movants Motion to Modify the Stay is DENIED.**

Respectfully submitted,

DATED: 2/21/2018

Calvin Taylor, Jr., Pro Se Debtor



EXHIBIT #1.

EXHIBIT #1.

**1. By this Agreement,** dated June 21, 2017

Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.

**2. PURCHASE PRICE AND DEPOSITS (4-14)**

(A) Purchase Price $ 1,80,000.00

( One Hundred Eighty Thousand                                    U.S. Dollars), to be paid by Buyer as follows:

1. Initial Deposit, within _____ days (5 if not specified) of Execution Date;                    $

   if not included with this Agreement;                                                           $

2. Additional Deposit within _____ days of the Execution Date:                                    $

3. _____                                               $ 1,000.00

Remaining balance will be paid at settlement.

(B) All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer within 30 days of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by personal check.

(C) Deposits, regardless of the form of payment, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here: _____ ;),

who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or termination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this Agreement.

**3. SELLER ASSIST (If Applicable) (1-10)**

Seller will pay $ _____ or _____ 3,000 % of Purchase Price (0 if not specified) toward Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is approved by mortgage lender.

**4. SETTLEMENT AND POSSESSION (4-14)**

(A) Settlement Date is September 29, 2017 _____ , or before if Buyer and Seller agree.

(B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless Buyer and Seller agree otherwise.

(C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable: current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer fees, together with any other lienable municipal service fees. All charges will be prorated for the period(s) covered. Seller will pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here:

(D) For purposes of prorating real estate taxes, the "periods covered" are as follows:

1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
2. School tax bills for the Philadelphia, Pittsburgh, and Scranton School Districts are for the period from January 1 to December 31. School tax bills for all other school districts are for the period from July 1 to June 30.

(E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____

(F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____

(G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property is subject to a lease.

(H) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer will acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this Agreement.

☐ Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement.

**5. DATE/TIME IS OF THE ESSENCE (4-10)**

(A) Written acceptance of all parties will be on or before: June 24, 2017

(B) The Settlement Date, and all other dates and times identified for the performance of any obligations of this Agreement are of the essence and are binding.

(C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by signing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding the day this Agreement was executed and including the last day of the time period. All changes to this Agreement should be initialed and dated.

(D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agreement of the parties.

(E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable to all parties, except where restricted by law.

6. **ZONING (4-14)**

Failure of this Agreement to contain the zoning classification (except in cases where the property [and each parcel thereof, if subdividable] is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.

Zoning Classification, as set forth in the local zoning ordinance: _____

7. **FIXTURES AND PERSONAL PROPERTY (9-16)**

(A) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in or on the Property, free of liens, and other items including plumbing; heating; gas fireplace logs; radiator covers; lighting fixtures (including chandeliers and ceiling fans); pools; spas and hot tubs (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; television antennas; mounting brackets and hardware for television and sound equipment; unbolted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware (including rods and brackets), shades and blinds; awnings; central vacuum system (with attachments); built-in air conditioners; built-in appliances; the range/oven; dishwashers; trash compactors; any remaining heating and cooking fuels stored on the Property at the time of settlement; and, if owned, water treatment systems, propane tanks, satellite dishes and security systems;

Also included: _____

(B) Unless stated otherwise, the value of the items listed above are not included in the Purchase Price.

(C) The following items are LEASED (not owned by Seller). Contact the provider/vendor for more information (e.g., water treatment systems, propane tanks, satellite dishes and security systems): _____

(D) EXCLUDED fixtures and items: _____

8. **MORTGAGE CONTINGENCY (9-16)**

☐ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties may include an appraisal contingency.

☒ ELECTED.

(A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| Loan Amount $ 173,700.00 | Loan Amount $ |
| Minimum Term 30 years | Minimum Term years |
| Type of mortgage FHA | Type of mortgage |
| For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ %. | For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ %. |
| Mortgage lender AMERICAN FINANCIAL NETWORK | Mortgage lender |
| Interest rate 3.800 %; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of 4.000 %. | Interest rate _____ %; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of _____ %. |
| Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. | Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. |

(B) Upon receiving documentation demonstrating lender's approval, whether conditional or outright, of Buyer's mortgage application(s) according to the terms set forth above, Buyer will promptly deliver a copy of the documentation to Seller, but in any case no later than September 22, 2017.

1. If Seller does not receive a copy of the documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) by the date indicated above, Seller may terminate this Agreement by written notice to Buyer. Seller's right to terminate continues until Buyer delivers documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this Paragraph, Buyer must continue to make a good faith effort to obtain mortgage financing.

2. Seller may terminate this Agreement by written notice to Buyer after the date indicated above if the documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s):
   a. Does not satisfy the terms of Paragraph 8(A), OR
   b. Contains any condition not specified in this Agreement (e.g., Buyer must settle on another property, an appraisal must be received by the lender, or the approval is not valid through the Settlement Date) that is not satisfied and/or removed in writing by the mortgage lender(s) within 7 DAYS after the date indicated in Paragraph 8(B), or any extension thereof, other than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming employment).

3. If this Agreement is terminated pursuant to Paragraphs 8(B)(1) or (2), or the mortgage tour(s) is not obtained for settlement, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 and this Agreement will be VOID, Buyer will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender(s).

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Buyer Initials: _____ / _____

Seller Initials: _____ / _____ Untitled

(C) The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular LTV may be necessary to qualify for certain loans, or buyers might be required to pay additional fees if the LTV exceeds a specific level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan. The appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be higher or lower than the Purchase Price and/or market price of the property.

(D) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the interest lender(s) gives Buyer the right to guarantee the interest rate(s) and fee(s) at or below the maximum levels stated. If lender(s) gives Buyer the right to lock in the interest rate(s), Buyer will do so at least _15_ days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and as permitted by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to Buyer and/or the mortgage lender(s) to make the above mortgage term(s) available to Buyer.

(E) Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage application (including payment for and ordering of credit reports without delay) for the mortgage terms and to the mortgage lender(s) identified in Paragraph 8(A), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any, otherwise Broker for Seller, if any, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process. Broker for Seller, if any, is permitted to contact the mortgage lender(s) at any time to determine the status of the mortgage loan application.

(F) Buyer will be in default of this Agreement if Buyer furnishes false information to anyone concerning Buyer's financial and/or employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment for and ordering of appraisal without delay), fails to lock in interest rate(s) as stated in Paragraph 8(D), or otherwise causes the lender to reject, or refuse to approve or issue, a mortgage loan commitment.

(G) If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within _____ DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's expense.

1. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement.

2. If Seller will not make the required repairs, or if Seller fails to respond within the stated time, Buyer will, within _____ DAYS, notify Seller of Buyer's choice to:
   a. Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which will not be unreasonably withheld, OR
   b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

   If Buyer fails to respond within the time stated in Paragraph 8(G)(2) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property, make the required repairs/improvements at Buyer's expense and agree to the RELEASE in Paragraph 28 of this Agreement.

FHA/VA, IF APPLICABLE

(H) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner, Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than $180,000.00 (the Purchase Price as stated in this Agreement.) Buyer will have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the Property are acceptable.

Warning: Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing Administration Transactions, provides, "Whoever, for the purpose of . . . influencing in any way the action of such Department, makes, passes, utters or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not more than two years, or both."

(I) ☒ Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that FHA will not perform a home inspection nor guarantee the price or condition of the Property.

(J) Certification We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in connection with this transaction is attached to this Agreement.

9. CHANGE IN BUYER'S FINANCIAL STATUS (4-14)
In the event of a change in Buyer's financial status affecting Buyer's ability to purchase, Buyer shall promptly notify Seller and lender(s) to whom the Buyer submitted a mortgage application, if any, in writing. A change in financial status includes, but is not limited to, loss or a change in employment; failure or loss of sale of Buyer's home; Buyer's having incurred a new financial obligation; entry of a judgment against Buyer. Buyer understands that applying for and/or incurring an additional financial obligation may affect Buyer's ability to purchase.

Produced with zipForm by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com    Untitled



EXHIBIT #2.

**ROUNDPOINT**
MORTGAGE SERVICING CORPORATION
PO Box 19409
Charlotte, NC 28219-9409

**INCOMPLETE INFORMATION NOTICE**

07/10/2017

YVETTE HAMILTON
6337 BURRIDGE ST
PHILADELPHIA, PA 19144

**Loan Number:**
1002064648
**Property Address:**
6337 BURRIDGE ST
PHILADELPHIA, PA 19144

Dear YVETTE HAMILTON

RoundPoint is proud to service your mortgage loan. Thank you for submitting your request for assistance. During our preliminary review of the information in the application you supplied RoundPoint, we have determined that your application for borrower assistance is incomplete and that the following items are missing:

General:

- Please return a copy of the last two (2) months of bank statements for any and all checking, savings, money market and/or brokerage accounts held by each borrower.(For your Account #XX3312, Please provide most recent 60 days Bank Statement to meet the require time frame as the available bank statement is only 21 days bank statement. Please provide all pages even if blank. Online banking printouts are not acceptable.)

- Please return a copy of the Estimated HUD1 or Settlement Statement.(Please provide a most recent copy of your closing disclosure statement.)

- Please complete, sign and return the Request for Transcript of Tax Return (IRS Form 4506-T) for each borrower (borrowers who filed their tax returns jointly may send in one IRS Form 4506-T signed and dated by both of the joint filers).(Please check the appropriate box of 6 of IRS Form 4506-T.)

- Please return a copy of the mortgagors court-recorded divorce decree proving no obligation to the mortgage.(Provide a court recorded copy of the divorce decree stating how the property was awarded.)

Calvin Taylor, Jr.:

- Please return a copy of the mortgagors most recent quarterly or year to date profit/loss statement.(Please provide most recent evidence of Tips, Commission, Bonus or Self-employed income as amount of $3300.00 as the provided profit & loss statement does not satisfy your income. And if not available then please provide updated page #2 of UBAF with mentioning your current monthly gross income.)

- Please return a copy of the mortgagors proof of other income.(Please provide your proof of income as amount $1271.00 as noticed in your bank statement(#XX3312), credited on 05/03/2017 & if not available please provide letter of explanation with most recent signed and dated.)

Please fax the required documentation to us at 877-343-2448 or mail it to us at the address below:

P.O. Box 19409 | Charlotte, North Carolina 28219-9409 | 877.426.8805
www.rpmservicing.com

Colorado Residents:    RoundPoint Mortgage Servicing Corporation maintains an in-state office as required by 4 Code of Colorado Regulations 903-1.
Colorado Manager, Inc., 80 Garden Center, Suite 3, Broomfield CO 80020   Phone: 303-920-4763

RoundPoint Mortgage Servicing Corporation
PO Box 19409
Charlotte, NC 28219-9409

As of 07/10/2017 the following documents have been received:

If you believe that this list is not accurate please contact the Homeowner Assistance Team at 877-426-8805.

It is important to note, financial documents such as income and asset documentation, explanation of hardship letter and borrower assistance application must be dated within 90 days at the time of RoundPoint's receipt to be considered most recent and valid during the evaluation of your request. This general rule excludes documents that are only furnished/published on an annual, semi-annual or quarterly basis (example: tax returns, benefit statements, lease agreements). In the event a document is published on an annual, semi-annual or quarterly basis RoundPoint will accept and deem the most recent copy of the document(s) valid for the purpose of completing the evaluation of your application. In the event you are not able to provide one or more of the aforementioned documents dated within 90 days in age prior to delivering to RoundPoint, please provide a detailed explanation of the reason you are not able to provide such documents. Any explanation letter received by RoundPoint will be reviewed and considered as part of your application. Please note a letter of explanation may not be sufficient to meet the documentation requirements and may result in denial of your application.

Please provide the above requested documents and/or information to RoundPoint by 08/05/2017. This date is merely a suggested timeline to assist in the expedient review of your application. Any information received after this date, but before a determination has been made, will still be reviewed as part of your application for assistance. However, the sooner we receive your information, the more quickly we can complete the evaluation of your application.

Upon receipt of all documents we will evaluate your request for assistance within 30 calendar days and provide you with the result of our evaluation of your assistance application. During our evaluation of your assistance application, we may request you to provide additional information upon further review of the documentation provided. Additional documentation may include, but is not limited to information related to liens attached to the subject property, legal documentation pertaining to events such as divorce and granting access to the interior of your home to complete a property valuation. In the event of such a request, please promptly follow up with us so we can process your request for assistance as quickly as possible. Failure to respond timely to our request for additional information, if applicable, may result in the denial of your application review.

Additionally, RoundPoint encourages you to contact servicers of any other mortgage loans secured by the same property to discuss any available loss mitigation options.

## Foreclosure Information (if applicable)

If your complete Borrower Assistance Application is received within 37 days of a scheduled foreclosure sale, we will make every effort to expedite the review of your application prior to the scheduled foreclosure sale. If appropriate, we may attempt to postpone a scheduled foreclosure sale to allow us time to complete a full review of your package. Please understand that a foreclosure sale postponement is not guaranteed, and in some jurisdictions a scheduled foreclosure sale may not be postponed due to local regulations.

If your loan has been referred to a foreclosure attorney to begin foreclosure proceedings and RoundPoint has received your complete Borrower Assistance Application more than 37 days prior a scheduled foreclosure sale date and your application is not deemed to be identical to an application previously received by RoundPoint, those proceedings will not continue until the holder of your mortgage decisions your request for assistance.

## Property Valuation(s):

During our review of the borrower assistance application, we may obtain a current valuation of the property or properties associated with the aforementioned account in order to complete the evaluation of your borrower assistance application. A property valuation, such as a Broker Price Opinion (BPO) or appraisal can be used during the borrower assistance evaluation period to validate important information such as, but not limited to occupancy status, property condition and

Colorado Residents:  RoundPoint Mortgage Servicing Corporation maintains an in-state office as required by 4 Code of Colorado Regulations 903-1,
Colorado Manager, Inc., 80 Garden Center, Suite 3, Broomfield CO 80020  Phone: 303-920-4763

value. RoundPoint will deliver a copy of any property valuation ordered and considered in connection with the evaluation of your borrower assistance application for your records.

Please note that you may be charged a fee equal to the cost of a property valuation(s) used in connection with evaluation of your request for assistance. A property valuation fee charged for each valuation may range from $20 to $475, or more depending on the type of evaluation required by the owner of your loan. For more information on property valuation fees, please visit our website at www.rpmservicing.com.

## Questions:

We appreciate your business and look forward to the opportunity to assist you. If all of the requested documentation and information cannot be provided to us, or if you have any other questions, please contact me directly at, 704-764-6409. If I am unavailable, you will have the option to schedule me to call you back or speak to one of my knowledgeable associates. Additionally, you can also call RoundPoint at 877-426-8805. Our offices are open Monday through Friday from 8:00 a.m. until 9:00 p.m. and Saturday from 10:00 a.m. until 3:00 p.m. Eastern Time.

Sincerely,

Marcia Farrow
704-764-6409
Loss Mitigation Department
RoundPoint Mortgage Servicing Corporation

If you prefer, you may also reach out to a counselor to assist you in completing your package. The Federal government provides contact information for housing counselors, which you can access by contacting Department of Housing and Urban Development at www.hud.gov or by calling 1-800-569-4287.

(See disclosures on page 2)

To provide us with a Notice of Error about the servicing of your loan, or make a Request for Information about the servicing of your loan, please write to us at:

RoundPoint Mortgage Servicing Corporation
P.O. Box 19789
Charlotte, NC 28219-9409

Federal law requires us to advise you that RoundPoint Mortgage Servicing Corporation (NMLS ID# 18188) is a debt collector and that this is an attempt to collect a debt. Any information obtained may be used for that purpose. To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy proceeding, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect indebtedness as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address, and telephone number.

Notice to Customers: RoundPoint Mortgage Servicing Corporation may report information about your mortgage account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

FOR NORTH CAROLINA RESIDENTS: RoundPoint Mortgage Servicing Corporation is physically located at 5016 Parkway Plaza Blvd, Charlotte, NC 28217. North Carolina Collection Agency permit no. 102965

FOR COLORADO RESIDENTS: RoundPoint Mortgage Servicing Corporation maintains an in-state office as required by 4 Code of Colorado Regulations 903-1. Colorado Manager, Inc., 80 Garden Center, Suite 3, Broomfield, CO 80020. Phone: 303-920-4763

P.O. Box 19409 | Charlotte, North Carolina 28219-9409 | 877.426.8805
www.rpmservicing.com
Colorado Residents: RoundPoint Mortgage Servicing Corporation maintains an in-state office as required by 4 Code of Colorado Regulations 903-1.
Colorado Manager, Inc., 80 Garden Center, Suite 3, Broomfield CO 80020  Phone: 303-920-4763

EXHIBIT #3.

EXHIBIT #3.

**HP Officejet Pro 8810 Series**

**Fax Log for**
Calvin Taylor Jr, Esq
2158492776
28 Aug 2017 17:49

Last Transaction

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|------------|----------|-------|--------|
| 28 Aug | 17:39 | Fax Sent | 8773432448 | 10:27 N/A | 20 | OK |

Digital Fax

Part 1 of 4

# Calvin Taylor, Jr., Esq.

**8337 Burbridge Street, Phila., PA 19144, [O](215) 529-8930**
TAYLOROWENSLAW@GMAIL.com , [FX](215) 600-4428

**VIA FACSIMILE ONLY**

August 28, 2017

Roundpoint Mortgage Servicing Corporation
*Attn: Loss Mitigation Department*
P.O. 19409
Charlotte, NC 28219-9409

RE:   <u>Response To Incomplete Notice Letter</u>

Loan Number:          1002064648
Property Address:     6337 Burbridge St., Phila., PA 19144

<u>REQUEST FOR SHORT SALE</u>

To The Loss Mitigation Department:

In response to your letter requesting additional documents, enclosed please find said items, some with accompanying explanations, the same of which is spelled-out below:

**EXHIBIT "A"**; I have enclosed the executed form 4506-EZ. The same was forwarded to you on or about June 22, 2017.

**EXHIBIT "B"**; The Divorce Decree and Certification and the Complaint in Divorce.

**EXHIBIT "C"**; The Divorce Property Settlement and Retirement Benefits Court Order, the same of which had been submitted in June, 2017.

**EXHIBIT "D"**; The Quit Claim Deed for the property in issue from Yvette D. Hamilton to Calvin Taylor, Jr.

**EXHIBIT "E"**; These are Monthly Statements for February-April, 2017 for my Wells Fargo Checking Account #205970186. It had a negative balance for months and was finally closed. As stated and submitted earlier, I was admitted into Chestnut Hill Hospital and then transferred to Ivy Hill Rehabilitation Center from November 27, 2016, until February 11, 2017. During that time I was unable to work or generate income.

**EXHIBIT "F"**; As it relates to my Checking Account #1790823312, I received a fee in the amount of $1,271.00, which I used to open the account. This Exhibit also contains my 2ned Quarter Profit & Loss Statement.

**EXHIBIT "G"**: Wells Fargo Account Statements for July and August, 2017, for Account #179082331, as well as my 3rd Quarter Profit & Loss Statement thus far.

**EXHIBIT "H"**: The Itemized Estimated Closing Sheet, as requested.

**EXHIBIT "I"**: This is the revised/updated 2nd page of the UBAF. As a result of my illnesses, most of which resulted from my January 5, 2015, head-on collision, my law practice has dwindled. Consequently, the household is operating at a deficit. This is why the short sale is necessary.

Finally, as the Sheriff's Sale is scheduled for September 12, 2017, please postpone it so new can complete this process. Should you have any questions or concerns, feel free to contact me.

Thank you, in advance, for your continued cooperation and assistance.

Very truly yours,

Calvin Taylor, Jr., Esq.

**ENCLOSURES:**

**CC: William Rodriguez**

EXHIBIT #4.

**ROUNDPOINT**
MORTGAGE SERVICING CORPORATION
PO Box 19409
Charlotte, NC 28219-9409

# INCOMPLETE INFORMATION NOTICE

08/29/2017

YVETTE HAMILTON
6337 BURBRIDGE ST
PHILADELPHIA, PA 19144

**Loan Number:**
1002064648
**Property Address:**
6337 BURBRIDGE ST
PHILADELPHIA, PA 19144

Dear YVETTE HAMILTON :

RoundPoint is proud to service your mortgage loan. Thank you for submitting your request for assistance. During our preliminary review of the information in the application you supplied RoundPoint, we have determined that your application for borrower assistance is incomplete and that the following items are missing:

General:

- Please return a copy of the last two (2) months of bank statements for any and all checking, savings, money market and/or brokerage accounts held by each borrower.(For your Account #XX8323, Please provide most recent 60 days Bank Statement since the available one is expired. Please provide all pages even if blank. Online banking printouts are not acceptable.)
- Please return a copy of the Estimated HUD1 or Settlement Statement.(Please provide a most recent copy of your closing disclosure statement.)
- Please complete, sign and return the Request for Transcript of Tax Return (IRS Form 4506-T) for each borrower (borrowers who filed their tax returns jointly may send in one IRS Form 4506-T signed and dated by both of the joint filers).(Please provide new 4506T-EZ Form as old the available form is outdated, Signed and Dated.)

Please fax the required documentation to us at 877-343-2448, or mail it to us at the address below:

RoundPoint Mortgage Servicing Corporation
PO Box 19409
Charlotte, NC 28219-9409

As of 08/29/2017 the following documents have been received:

If you believe that this list is not accurate please contact the Homeowner Assistance Team at 877-426-8805.

As of the date of this letter, the referenced mortgaged property has a scheduled foreclosure sale date of 09/12/2017. If the requested information listed above is not received within 7 calendar days prior to the scheduled foreclosure sale date, your application file will be closed and the sale of your home will resume. Please note, if the requested information

WWW.TDTSERVICING.COM

Colorado Residents: RoundPoint Mortgage Servicing Corporation maintains an in-state office as required by 4 Code of Colorado Regulations 903-1.
Colorado Manager, Inc., 80 Garden Center, Suite 3, Broomfield CO 80020  Phone: 303-920-4763

listed above is received within 37 days of the aforementioned scheduled foreclosure sale date, we will make every effort to expedite the review of your application prior to the scheduled foreclosure sale. If appropriate, we may attempt to postpone a scheduled foreclosure sale to allow us time to complete a full review of your application. Please understand that a foreclosure sale postponement is not guaranteed, and in some jurisdictions a scheduled foreclosure sale may not be postponed due to local regulations. It is very important that you return the requested items by the requested date.

It is important to note, financial documents such as income and asset documentation, explanation of hardship letter and borrower assistance application must be dated within 90 days at the time of RoundPoint's receipt to be considered most recent and valid during the evaluation of your request. This general rule excludes documents that are only furnished/published on an annual, semi-annual or quarterly basis (example: tax returns, benefit statements, lease agreements). In the event a document is published on an annual, semi-annual or quarterly basis RoundPoint will accept and deem the most recent copy of the document(s) valid for the purpose of completing the evaluation of your application. In the event you are not able to provide one or more of the aforementioned documents dated within 90 days in age prior to delivering to RoundPoint, please provide a detailed explanation of the reason you are not able to provide such documents. Any explanation letter received by RoundPoint will be reviewed and considered as part of your application. Please note a letter of explanation may not be sufficient to meet the documentation requirements and may result in denial of your application.

Please provide the above requested documents and/or information to RoundPoint immediately. This is to assist in the expedient review of your application. Any information received will still be reviewed as part of your application for assistance. However, the sooner we receive your information, the more quickly we can complete the evaluation of your application. As a reminder, please understand that by submitting the aforementioned documentation does not guarantee a foreclosure sale postponement, and in some jurisdictions a scheduled foreclosure sale may not be postponed due to local regulations. It is very important that you return the requested items immediately.

During our evaluation of your assistance application, we may request you to provide additional information upon further review of the documentation provided. Additional documentation may include, but is not limited to information related to liens attached to the subject property, legal documentation pertaining to events such as divorce and granting access to the interior of your home to complete a property valuation. In the event of such a request, please promptly follow up with us so we can process your request for assistance as quickly as possible. Failure to respond timely to our request for additional information, if applicable, may result in the denial of your application review.

Additionally, RoundPoint encourages you to contact servicers of any other mortgage loans secured by the same property to discuss any available loss mitigation options.

## Property Valuation(s):

During our review of the borrower assistance application, we may obtain a current valuation of the property or properties associated with the aforementioned account in order to complete the evaluation of your borrower assistance application. A property valuation, such as a Broker Price Opinion (BPO) or appraisal can be used during the borrower assistance evaluation period to validate important information such as, but not limited to occupancy status, property condition and value. RoundPoint will deliver a copy of any property valuation ordered and considered in connection with the evaluation of your borrower assistance application for your records.

Please note that you may be charged a fee equal to the cost of a property valuation(s) used in connection with evaluation of your request for assistance. A property valuation fee charged for each valuation may range from $20 to $475, or more depending on the type of evaluation required by the owner of your loan. For more information on property valuation fees, please visit our website at www.rpmservicing.com.

## Questions:

We appreciate your business and look forward to the opportunity to assist you. If you have any other questions, please contact me directly at, 704-764-6409 . If I am unavailable, you will have the option to schedule me to call you back or speak to one of my knowledgeable associates. Additionally, you can also call RoundPoint at 877-426-8805. Our offices are open Monday through Friday from 8:00 a.m. until 9:00 p.m. and Saturday from 10:00 a.m. until 3:00 p.m. Eastern Time.

P.O. Box 19409 | Charlotte, North Carolina 28219-9409 | 877.426.8805

www.rpmservicing.com

Colorado Residents: RoundPoint Mortgage Servicing Corporation maintains an in-state office as required by 4 Code of Colorado Regulations 903-1.

Colorado Manager, Inc., 80 Garden Center, Suite 3, Broomfield CO 80020  Phone: 303-920-4763

If you prefer, you may also reach out to a counselor to assist you in completing your package. The Federal government provides contact information for housing counselors, which you can access by contacting Department of Housing and Urban Development at www.hud.gov or by calling 1-800-569-4287.

Sincerely,

Marcia Farrow
704-764-6409
Loss Mitigation Department
RoundPoint Mortgage Servicing Corporation

(See disclosures on page 3)

To provide us with a Notice of Error about the servicing of your loan, or make a Request for Information about the servicing of your loan, please write to us at:

RoundPoint Mortgage Servicing Corporation
P.O. Box 19789
Charlotte, NC 28219-9409

Federal law requires us to advise you that RoundPoint Mortgage Servicing Corporation (NMLS ID# 18188) is a debt collector and that this is an attempt to collect a debt. Any information obtained may be used for that purpose. To the extent your obligation has been discharged or is subject to the automatic stay in a bankruptcy proceeding, this notice is for informational purposes only and does not constitute a demand for payment or an attempt to collect indebtedness as your personal obligation. If you are represented by an attorney, please provide us with the attorney's name, address, and telephone number.

Notice to Customers: RoundPoint Mortgage Servicing Corporation may report information about your mortgage account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

FOR NORTH CAROLINA RESIDENTS: RoundPoint Mortgage Servicing Corporation is physically located at 5016 Parkway Plaza Blvd, Charlotte, NC 28217. North Carolina Collection Agency permit no. 102965.

FOR COLORADO RESIDENTS: RoundPoint Mortgage Servicing Corporation maintains an in-state office as required by 4 Code of Colorado Regulations 903-1. Colorado Manager, Inc., 80 Garden Center, Suite 3, Broomfield, CO 80020. Phone: 303-920-4763

FOR TEXAS RESIDENTS: COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877-276-5550.

A complaint form and instructions may be downloaded and printed from the Department's website located at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone at its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov

Colorado Residents: RoundPoint Mortgage Servicing Corporation maintains an in-state office as required by 4 Code of Colorado Regulations 903-1
Colorado Manager, Inc., 80 Garden Center, Suite 3, Broomfield CO 80020  Phone: 303-920-4763

EXHIBIT #5.

EXHIBIT #5.

HP Officejet Pro 8610 Series

Fax Log for
Calvin Taylor Jr, Esq
2158492776
05 Sep 2017 10:25

Last Transaction

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|-----------|----------|-------|--------|
| 5 Sep | 10:18 | Fax Sent | 8773432448 | Digital Fax<br>5:52<br>N/A | 15 | OK |

EXHIBIT #6.

EXHIBIT #6.

# LISTING CONTRACT (SELLER AGENCY CONTRACT)
## EXCLUSIVE RIGHT TO SELL REAL ESTATE

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

XLS

**SELLER** Calvin Taylor Jr.

**SELLER'S MAILING ADDRESS** 6337 Burbridge Street, Philadelphia, PA 19144

**PHONE** 215-500-0709    FAX

**E-MAIL** taylorowenslaw@gmail.com

Seller understands that this Listing Contract is between Broker and Seller.
Does Seller have a listing contract for this Property with another broker? ☐ Yes  ☑ No
If yes, explain:

**Broker (Company)** Elfant Wissahickon Realtors

| | Licensee(s) (Name) John O'Connell |
|---|---|
| Company Address 8039 Germantown Avenue | Direct Phone(s) 267-312-1925 |
| Philadelphia, PA 19118 | Cell Phone(s) 267-312-1925 |
| Company Phone 215-247-3600 | Fax 215-242-5262 |
| Company Fax 215-242-5262 | Email john@elfantwissahickon.com |

1. **PROPERTY**
   Address 6337 Burbridge Street
   Municipality (city, borough, township) Philadelphia
   County Philadelphia County                    School District Philadelphia
   Zoning Single Family
   Present Use Residential
   Identification (For example, Tax ID #; Parcel #; Lot, Block; Deed Book; Page; Recording Date)
   593161800 Tax ID Number

   **LISTED PRICE** $ 205,000        ZIP 19144

2. **STARTING & ENDING DATES OF LISTING CONTRACT (ALSO CALLED "TERM")**
   (A) No Association of REALTORS® has set or recommended the term of this contract. Broker/Licensee and Seller have discussed and agreed upon the term of this Contract.
   (B) **Starting Date:** This Contract starts when signed by Broker and Seller, unless otherwise stated here:
   (C) **Ending Date:** This Contract ends at 11:59 PM on 03/30/2018        By law, the term of a listing contract may not exceed one year. If the Ending Date written in this Contract creates a term that is longer than one year, the Ending Date is automatically 364 days from the Starting Date of this Contract.

3. **DUAL AGENCY**
   Seller agrees that Broker and Broker's Licensee(s) may also represent the buyer(s) of the Property. A Broker is a Dual Agent when a Broker represents both a buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents a buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for a buyer and Seller. If the same Licensee is designated for a buyer and Seller, the Licensee is a Dual Agent. Seller understands that Broker is a Dual Agent when a buyer who is represented by Broker is viewing properties listed by Broker.

4. **DESIGNATED AGENCY**
   Designated Agency is applicable, unless checked below. Broker designates the Licensee(s) above to exclusively represent the interests of Seller. If Licensee is also the buyer's agent, then Licensee is a DUAL AGENT.
   ☐ **Designated Agency is not applicable.**

5. **BROKER'S FEE**
   (A) No Association of Realtors® has set or recommended the Broker's Fee. Broker and Seller have negotiated the fee that Seller will pay Broker.
   (B) Broker's Fee is 6        % of the sale price OR $5000.00        , whichever is greater, AND $
       paid to Broker by Seller as follows:
       1.  $                Broker's Fee is earned and due (non-refundable) at signing of this Listing Contract, payable
           to Broker.

noloo signature verification

rootsoo.com/myev=flavetXL_2834D272k.18-V1.M1



Pennsylvania Association of Realtors®

Broker/Licensee Initials:

Seller Initials

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2011
4/14

**2. Seller will pay the balance of Broker's Fee if:**

**a.** **Property, or any ownership interest in it, is sold or exchanged during the term of this Contract by Broker, Broker's Licensee(s), Seller, or by any other person or broker, at the listed price or any price acceptable to Seller, OR**

**b.** A ready, willing, and able buyer is found, during the term of this contract, by Broker or by anyone, including Seller. A willing buyer is one who will pay the listed price or more for the Property, or one who has submitted an offer accepted by Seller, OR

**c.** Negotiations that are pending at the Ending Date of this Contract result in a sale, OR

**d.** A Seller signs an agreement of sale then refuses to sell the Property, or if a Seller is unable to Sell the Property because of failing to do all the things required of the Seller in the agreement of sale (Seller default), OR

**e.** The Property or any part of it is taken by any government (or public use (Eminent Domain)), in which case Seller will pay from any money paid by the government, OR

**f.** A sale occurs after the Ending Date of this Contract IF: _____ of the Ending Date, AND
    (1) The sale occurs within 60 Days
    (2) The buyer was shown or negotiated to buy the Property during the term of this contract, AND
    (3) The Property is not listed under an "exclusive right to sell contract" with another broker at the time of sale.

**(C)** If a sale occurs, balance of Broker's Fee will be paid upon delivery of the deed or other evidence of transfer of title or interest. If the Property is transferred by an installment contract, balance of Broker's Fee will be paid upon the execution of the installment contract.

**6. BROKER'S FEE IF SETTLEMENT DOES NOT OCCUR**

If an agreement of sale is signed and settlement does not occur, and deposit monies are released to Seller, Seller will pay Broker **50%** of/from deposit monies.

**7. COOPERATION WITH OTHER BROKERS**

Licensee(s) has explained Broker's company policies about cooperating with other brokers. Broker and Seller agree that Broker will pay from Broker's Fee a fee to another broker who procures the buyer, is a member of a Multiple Listing Service (MLS), and who:

**(A)** ☐ Represents Seller (SUBAGENT). Broker will pay _____ of/from the sale price.
**(B)** ☒ Represents the buyer (BUYER'S AGENT). Broker will pay **3.00** % of/from the sale price.
    A buyer's Agent, even if compensated by Broker for Seller, will represent the interests of the buyer.
**(C)** ☐ Does not represent either Seller or a buyer (TRANSACTION LICENSEE).
    Broker will pay _____ of/from the sale price.

**8. DUTIES OF BROKER AND SELLER**

**(A)** Broker is acting as a Seller Agent, as described in the Consumer Notice, to market the Property and to negotiate with potential buyers. Broker will use reasonable efforts to find a buyer for the Property.

**(B)** Seller will cooperate with Broker and assist in the sale of the Property as asked by Broker.

**(C)** All showings, negotiations and discussions about the sale of the Property, written or oral, will be communicated by Broker on Seller's behalf. All written or oral inquiries that Seller receives or learns about regarding the Property, regardless of the source, will be referred to Broker.

**(D)** If the Property, or any part of it, is rented, Seller will give any leases to Broker before signing this Contract. If any leases are oral, Seller will provide a written summary of the terms, including amount of rent, ending date, and Tenant's responsibilities.

**(E)** Seller will not enter into, renew, or modify any leases, or enter into any option to sell, during the term of this Contract without Broker's written consent.

**9. BROKER'S SERVICE TO BUYER**

Broker may provide services to a buyer for which Broker may accept a fee. Such services may include, but are not limited to: document preparation; ordering certifications required for closing; financial services; title transfer and preparation services; ordering insurance, construction, repair, or inspection services.

**10. BROKER NOT RESPONSIBLE FOR DAMAGES**

Seller agrees that Broker and Broker's Licensee(s) are not responsible for any damage to the Property or any loss or theft of personal goods from the Property unless such damage, loss or theft is solely and directly caused by Broker or Broker's Licensee(s).

**11. DEPOSIT MONEY**

**(A)** Broker, if named in an agreement of sale, will keep all deposit monies paid by or for the buyer in an escrow account until the sale is completed, the agreement of sale is terminated, or the terms of a prior written agreement between the buyer and Seller have been met. This escrow account will be held as required by real estate licensing laws and regulations. Buyer and Seller may name a non-licensee as the escrow holder, in which case the escrow holder will be bound by the terms of the escrow agreement, if any, not by the Real Estate Licensing and Registration Act. Seller agrees that the person keeping the deposit monies may wait to deposit any uncashed check that is received as deposit money until Seller has accepted an offer.

**(B)** Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:

**1.** If an agreement of sale is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.

anthop signature verification www.dotloop.com/vverification/DL-2834307216-10-Y1AT

Broker/Licensee Initials: _____

XLS Page 2 of 6

Seller Initials: _____

2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, direct-ing Broker how to distribute some or all of the deposit monies.

3. According to the terms of a final order of court.

4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if there is a dispute between the parties that is not resolved.

(C) Seller agrees that if Seller names Broker or Broker's licensee(s) in litigation regarding deposit monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by Seller.

## 12. OTHER PROPERTIES

Seller agrees that Broker may list other properties for sale and that Broker may show and sell other properties to prospective buyers.

## 13. ADDITIONAL OFFERS

Unless prohibited by Seller, if Broker is asked by a buyer or another licensee(s) about the existence of other offers on the Property, Broker will reveal the existence of other offers and whether they were obtained by the Licensee(s) identified in this Contract, by an-other Licensee(s) working with Broker, or by a by a licensee(s) working for a different Broker. ONCE SELLER ENTERS INTO AN AGREEMENT OF SALE, BROKER IS NOT REQUIRED TO PRESENT OTHER OFFERS.

## 14. SELLER WILL REVEAL DEFECTS & ENVIRONMENTAL HAZARDS

(A) Seller (including Sellers exempt from the Real Estate Seller Disclosure Law) will disclose all known material defects and/or en-vironmental hazards on a separate disclosure statement. A material defect is a problem or condition that:

1. is a possible danger to those living on the Property; or

2. has a significant, adverse effect on the value of the Property.

The fact that a structural element, system or subsystem is near, at or beyond the end of the normal useful life of such a struc-tural element, system or subsystem is not by itself a material defect.

(B) Seller will update the Seller's Property Disclosure Statement as necessary throughout the term of this Listing Contract.

(C) If Seller fails to disclose known material defects and/or environmental hazards:

1. Seller will not hold Broker or Licensee(s) responsible in any way;

2. Seller will protect Broker and Licensee(s) from any claims, lawsuits, and actions that result;

3. Seller will pay all of Broker's and Licensee's costs that result. This includes attorneys' fees and court-ordered payments or settlements (money Broker or Licensee pays to end a lawsuit or claim).

## 15. IF PROPERTY WAS BUILT BEFORE 1978

The Residential Lead-Based Paint Hazard Reduction Act says that any seller of property built before 1978 must give the buyer an EPA pamphlet titled *Protect Your Family From Lead in Your Home*. The seller also must tell the buyer and the broker what the seller knows about lead-based paint and lead-based paint hazards that are in or on the property being sold. Seller must tell the buyer how the seller knows that lead-based paint and lead-based paint hazards are on the property, where the lead-based paint and lead-based paint hazards are, the condition of the painted surfaces, and any other information seller knows about lead-based paint and lead-based paint hazards on the property. Any seller of a pre-1978 structure must also give the buyer any records and reports that the seller has or can get about lead-based paint or lead-based paint hazards in or around the property being sold, the common areas, or other dwellings in multi-family housing. According to the Act, a seller must give a buyer 10 days (unless seller and the buyer agree to a different period of time) from the time an agreement of sale is signed to have a "risk assessment" or inspection for possible lead-based paint hazards done on the property. Buyers may choose not to have the risk assessment or inspection for lead paint hazards done. If the buyer chooses not to have the assessment or inspection, the buyer must inform the seller in writing of the choice. The Act does not require the seller to inspect for lead paint hazards or to correct lead paint hazards on the property. The Act does not apply to hous-ing built in 1978 or later.

## 16. HOME WARRANTIES

At or before settlement, Seller may purchase a home warranty for the Property from a third-party vendor. Seller understands that a home warranty for the Property does not alter any disclosure requirements of Seller, may not cover or warrant any pre-existing de-fects of the Property, and will not alter, waive or extend any provisions of the Agreement regarding inspections or certifications that Buyer may elect or waive as part of the Agreement. Seller understands that Broker who recommends a home warranty may have a business relationship with the home warranty company that provides a financial benefit to Broker.

## 17. RECOVERY FUND

Pennsylvania has a Real Estate Recovery Fund (the Fund) to repay any person who has received a final court ruling (civil judgment) against a Pennsylvania real estate licensee because of fraud, misrepresentation, or deceit in a real estate transaction. The Fund re-pays persons who have not been able to collect the judgment after trying all lawful ways to do so. For complete details about the Fund, call (717) 783-3658, or (800) 822-2113 (within Pennsylvania) and (717) 783-4854 (outside Pennsylvania).

## 18. NOTICE TO PERSONS OFFERING TO SELL OR RENT HOUSING IN PENNSYLVANIA

Federal and state laws make it illegal for a seller, a broker, or anyone to use RACE, COLOR, RELIGION or RELIGIOUS CREED, SEX, DISABILITY (physical or mental), FAMILIAL STATUS (children under 18 years of age), AGE (40 or older), NATIONAL ORI-GIN, USE OR HANDLING/TRAINING OF SUPPORT OR GUIDE ANIMALS, or the FACT OF RELATIONSHIP OR ASSOCI-ATION TO AN INDIVIDUAL KNOWN TO HAVE A DISABILITY as reasons for refusing to sell, show, or rent properties, loan money, or set deposit amounts, or as reasons for any decision relating to the sale of property.



# 19. TRANSFER OF THIS CONTRACT

(A) Seller agrees that Broker may transfer this Contract to another broker when:

    1. Broker stops doing business, OR

    2. Broker forms a new real estate business, OR

    3. Broker joins his business with another.

(B) Broker will notify Seller immediately in writing if Broker transfers this Contract to another broker. Seller will follow all requirements of this Contract with the new broker.

# 20. NO OTHER CONTRACTS

Seller will not enter into another listing contract for the property(s) identified in Paragraph 1 with another broker that begins before the Ending Date of this Contract.

# 21. CONFLICT OF INTEREST

It is a conflict of interest when Broker or Licensee has a financial or personal interest in the property and/or cannot put Seller's interests before any other. If Broker, or any of Broker's licensees, has a conflict of interest, Broker will notify Seller in a timely manner.

# 22. ENTIRE CONTRACT

This Contract is the entire agreement between Broker and Seller. Any verbal or written agreements that were made before are not a part of this Contract.

# 23. CHANGES TO THIS CONTRACT

All changes to this Contract must be in writing and signed by Broker and Seller.

# 24. MARKETING OF PROPERTY

(A) Where permitted, Broker, at Broker's option, may use: for sale sign, lock box, key in office, open houses and advertising in all media, including print and electronic, photographs and videos, unless otherwise stated here: _____

    1. ☐ ☐ Seller does not want the listed Property to be displayed on the Internet.

    2. ☐ Seller understands and acknowledges that, if the listed Property to be displayed on the Internet, consumers who conduct searches for listings on the Internet will not see information about the listed Property in response to their search.

(B) Seller understands and acknowledges that, if an open house is scheduled, the property address may be published on the Internet in connection to our open house.

(C) There are many ways of marketing properties electronically. Some brokers may use a virtual office website (also known as "VOW") or Internet data exchange (also known as "IDX"), which are governed by specific rules and policies. Sellers have the right to control some elements of how their property is displayed on a VOW and/or IDX websites.

    Seller elects to have the following features disabled or discontinued for VOW and/or IDX websites (check all that apply):

    ☐ Comments or reviews about Seller's listings, or a hyperlink to such comments or reviews, in immediate conjunction with Seller's listing.

    ☐ Automated estimates of the market value of Seller's listing, or a hyperlink to such estimates, in immediate conjunction with the Seller's listing.

(D) Multiple Listing Services (MLS)

    ☐ Broker will not use a Multiple Listing Service (MLS) to advertise the Property.

    ☑ Broker will use a Multiple Listing Service (MLS) to advertise the Property to other real estate brokers and salespersons. Listing broker shall communicate to the MLS all of Seller's elections made above.

(E) Seller agrees that Broker and Licensee, and the MLS are not responsible for mistakes in the MLS or advertising of the Property.

(F) Other

# 25. PUBLICATION OF SALE PRICE

Seller is aware that the Multiple Listing Service (MLS), newspapers, Web Sites, and other media may publish the final sale price of the Property.

# 26. COPYRIGHT

In consideration of Broker's efforts to market Seller's Property as stated in this Contract, Seller grants Broker a non-exclusive, world-wide license (the "License") to use any potentially copyrightable materials (the "Materials") which are related to the Property and provided by Seller to Broker or Broker's representative(s). The Materials may include, but are not limited to: photographs, images, video recordings, virtual tours, drawings, written descriptions, remarks, and pricing information related to Seller's Property. This License permits Broker to submit the Materials to one or more multiple listing services, to include the Materials in compilations of property listings, and to otherwise distribute, publicly display, reproduce, publish and produce derivative works from the Materials for any purpose that does not conflict with the express terms of this Contract. The License may not be revoked by Seller and shall survive the ending of this Contract. Seller also grants Broker the right to sublicense to others any of these rights granted to Broker by Seller. Seller represents and warrants to Broker that the License granted to Broker for the Materials does not violate or infringe upon the rights, including any copyrights, of any person or entity. Seller understands that the terms of the License do not grant Seller any legal right to any works that Broker may produce using the Materials.

dotloop signature verification: www.dotloop.com/my/verification/DL-283430726-10-Y1M1



Broker/Licensee Initials: _____ [10/17/17 2:07PM EDT]

Seller Initials: _____ [10/20/17 4:39PM EDT] _____ [10/20/17 4:57PM EDT]

dotloop signature verification: www.dotloop.com/my/verification?ID...2834307Z6-10-Y"LP"

## 27. FIXTURES AND PERSONAL PROPERTY

(A) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in the Property, free of liens, and other items including plumbing; heating; radiator covers; lighting fixtures (including chandeliers and ceiling fans); pools, spas and hot tubs (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; television antennas; mounting brackets and hardware for television and sound equipment; unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware (including rods and brackets), shades and blinds; awnings; built-in air conditioners; built-in appliances; the range/oven; any remaining heating and cooking fuels stored on the Property at the time of settlement; and, if owned, water treatment systems, propane tanks, satellite dishes and security systems. Also included:

(B) The following items are LEASED (not owned by Seller). Contact the provider/vendor for more information (e.g., water treatment systems, propane tanks, satellite dishes and security systems):

(C) EXCLUDED fixtures and items:

## 28. TAXES & SPECIAL ASSESSMENTS

(A) At settlement, Seller will pay one-half of the total Real Estate Transfer Taxes, unless otherwise stated here:

(B) Yearly Property Taxes $ _____                     Property Assessed Value $ _____

(C) Is the property preferentially assessed (including a tax abatement)?  ☐ Yes   ☐ No
    If applicable, how many years remain? _____

(D) ☐ COA/HOA Name _____   COA/HOA Phone _____
    COA/HOA special assessments $ _____   Buyer's required capital contribution $ _____
    Please explain: _____

(E) ☐ Municipality Assessments $ _____

(F) ☐ COA/HOA Fees $ _____   ☐ Quarterly   ☐ Monthly   ☐ Yearly

## 29. TITLE & POSSESSION

(A) Seller will give possession of Property to a buyer at settlement, or on _____

(B) At settlement, Seller will give full rights of ownership (fee simple) to a buyer except as follows:
    ☐ Oil   ☐ Gas   ☐ Mineral   ☐ Other _____
    If checked, please explain: _____

(C) ☐ Seller has:
    ☐ First mortgage with _____   Amount of balance $ _____
       Address _____
       Phone _____                Acct. # _____
    ☐ Second mortgage with _____  Amount of balance $ _____
       Address _____
       Phone _____                Acct. # _____
    ☐ Home Equity line of credit with _____  Amount of balance $ _____
       Address _____
       Phone _____                Acct. # _____
    ☐ Seller authorizes Broker to receive mortgage payoff and/or equity loan payoff information from lender(s).

(D) ☐ Seller has:
    ☐ Judgments $ _____          ☐ Past Due Municipal Assessment $ _____
    ☐ Past Due Property Taxes $ _____   ☐ Past Due COA/HOA Fees $ _____
    ☐ Federal Tax Liens $ _____   ☐ Past Due COA/HOA Assessments $ _____
    ☐ State Tax Liens $ _____
    ☐ Other: _____   $ _____

(E) ☐ If Seller, at any time on or since January 1, 1998, has been obligated to pay support under an order on record in any Pennsylvania county, list the county and the Domestic Relations Number or Docket Number: _____

## 30. BUYER FINANCING   Seller will accept the following arrangements for buyer to pay for the Property:
☑ Cash                        ☑ Conventional mortgage     ☐ FHA mortgage     ☐ VA mortgage
☐ Seller's Assist to buyer (if any) $ _____, or _____ %

dotloop signature verification: www.dotloop.com/my/verification/DL-283439276-10-YIA1

## 31. SPECIAL INSTRUCTIONS

The Office of the Attorney General has not pre-approved any special conditions or additional terms added by any parties. Any special conditions or additional terms in this Contract must comply with the Pennsylvania Plain Language Consumer Contract Act.

## 32. SPECIAL CLAUSES

(A) The following are part of this Listing Contract if checked:

☐ Property Description Addendum to Listing Contract (PAR Form XLS-A)
☐ Single Agency Addendum (PAR Form SA)
☐ Consumer Services Fee Addendum (PAR Form CSF)
☐ Vacant Land Addendum to Listing Contract (PAR Form VLA)
☐ Short Sale Addendum (PAR Form SSL)

(B) Additional Terms:

_____
_____
_____
_____
_____
_____
_____
_____
_____

Seller has read the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

Seller has received the Seller's Property Disclosure form and agrees to complete and return to Listing Broker in a timely manner, if required.

Seller has received the Lead-Based Hazards Disclosure form and agrees to complete and return to Listing Broker in a timely manner, if required.

Seller has read the entire Contract before signing. Seller must sign this Contract.

Seller gives permission for Broker to send information about this transaction to the fax number(s) and/or e-mail address(es) listed.

Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures of all parties, constitutes acceptance by the parties.

This Contract may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts together shall constitute one and the same Agreement of the Parties.

NOTICE BEFORE SIGNING: IF SELLER HAS LEGAL QUESTIONS, SELLER IS ADVISED TO CONSULT A PENNSYLVANIA REAL ESTATE ATTORNEY.

SELLER _____  DATE _____

SELLER _____  DATE 10/06/2017

SELLER _____  DATE _____

BROKER (Company Name) Elfant Wissahickon Realtors

ACCEPTED ON BEHALF OF BROKER BY _____  DATE _____

EXHIBIT #7.

EXHIBIT #7.

# STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE

ASR

## PARTIES

**BUYER(S):** Realty Royalty

**SELLER(S):** Calvin Taylor Jr and Yvette Hamilton

**BUYER'S MAILING ADDRESS:**
428 Oak Street, Coatesville, PA 19320

**SELLER'S MAILING ADDRESS:**
6337 Burbridge Street Philadelphia, PA 19144

## PROPERTY

**PROPERTY ADDRESS** 6337 Burbridge Street

Philadelphia, PA                    ZIP  19144

in the municipality of  Philadelphia , County of  Philadelphia ,
in the School District of  Philadelphia , in the Commonwealth of Pennsylvania.
Identification (e.g., Tax ID #; Parcel #; Lot, Block; Deed Book, Page, Recording Date): 70/8/00

## BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ No Business Relationship (Buyer is not represented by a broker)

Broker (Company)  Realty Mark City/Scope              Licensee(s) (Name)  Oscar McMekians

Company Address  1500 JFK Blvd Suite 1510
Philadelphia, PA 19102

| | |
|---|---|
| Company Phone  215-583-7777 | Direct Phone(s)  215-583-7777 |
| | Cell Phone(s)   267-269-0003 |
| Company Fax  215-364-1850 | Fax  215-422-3407 |
| | Email  oscatheregent@gmail.com |

Broker is:                                          Licensee(s) is:
☑ Buyer Agent (Broker represents Buyer only)        ☐ Buyer Agent with Designated Agency
☐ Dual Agent (See Dual and/or Designated Agent box below)  ☐ Buyer Agent without Designated Agency
                                                    ☐ Dual Agent (See Dual and/or Designated Agent box below)

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

## SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ No Business Relationship (Seller is not represented by a broker)

Broker (Company)  Elfant Wassabecian-Chestnut Hill      Licensee(s) (Name)  John O'Connell

Company Address  8039 Germantown Ave
Philadelphia, PA 19118

| | |
|---|---|
| Company Phone  215-247-3600 | Direct Phone(s)  267-312-1925 |
| | Cell Phone(s)   267-908-1289 |
| Company Fax  215-242-5262 | Fax  215-242-5262 |
| | Email  john@elfantwissahicob.com |

Broker is:                                          Licensee(s) is:
☑ Seller Agent (Broker represents Seller only)      ☑ Seller Agent with Designated Agency
☐ Dual Agent (See Dual and/or Designated Agent box below)  ☐ Seller Agent without Designated Agency
                                                    ☐ Dual Agent (See Dual and/or Designated Agent box below)

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

## DUAL AND/OR DESIGNATED AGENCY

A. A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a
Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate
Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency,
if applicable.

Buyer Initials: _CA_ / _CA_              ASR 1 of 11              Seller Initials: _____ / _____

1. **By this Agreement,** dated January 30, 2018
Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.

2. **PURCHASE PRICE AND DEPOSITS (1-10)**
(A) Purchase Price $ **Two Hundred Thousand Dollars ($2000,000.00)**
( _____ U.S. Dollars), to be paid by Buyer as follows:

1. Deposit at signing of this Agreement: $ _____
2. Deposit within _____ days of the Execution Date of this Agreement: $ _____
3. **Earnest Money to be paid at Settlement** $ **200.00**
4. Remaining balance to be paid at settlement. $ _____
(B) All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer within 30 DAYS of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by personal check.
(C) Deposits, regardless of the form of payment and the person designated as payee, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here: _____ ),
who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or termination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this Agreement.

3. **SELLER ASSIST (If Applicable) (1-10)**
Seller will pay $ 0 _____ or _____ % of Purchase Price (0 if not specified) toward
Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is approved by mortgage lender.

4. **SETTLEMENT AND POSSESSION (1-10)**
(A) Settlement Date is February 16, 2018 _____, or before if Buyer and Seller agree.
(B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless Buyer and Seller agree otherwise.
(C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable: current taxes (see Notice Regarding Real Estate Taxes); rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer fees, together with any other lienable municipal service fees. All charges will be pro-rated for the period(s) covered. Seller will pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here: _____

(D) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____

(E) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here _____

(F) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property is subject to a lease.
(G) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer will acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this Agreement.
☐ Tenant-Occupied Property Addendum (PAR Form TOP) is attached.

5. **DATES/TIME IS OF THE ESSENCE (1-10)**
(A) Written acceptance of all parties will be on or before: January 31, 2018
(B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the essence and are binding.
(C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by signing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding the day this Agreement was executed and including the last day of the time period. All changes to this Agreement should be initialed and dated.
(D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agreement of the parties.
(E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable to all parties.

6. **ZONING (1-10)**
Failure of this Agreement to contain the zoning classification (except in cases where the property [and each parcel thereof, if subdividable] is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
Zoning Classification: **Residential**



**7. FIXTURES AND PERSONAL PROPERTY (1-10)**

(A) INCLUDED in this sale are all existing items permanently installed in the Property, free of liens, and other items including plumbing; heating; radiator covers; lighting fixtures (including chandeliers and ceiling fans); pool and spa equipment (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; television antennas; unpotted shrubbery, plantings and trees; any remaining heating and cooking fuels stored on the Property at the time of settlement; smoke detectors and carbon monoxide detectors; storm windows and screens; storm doors; window covering hardware, shades and blinds; awnings; built-in air conditioners; built-in appliances; the range/oven, unless otherwise stated; and, if owned, water treatment systems; propane tanks, satellite dishes and security systems. Also included: _____

(B) The following items are LEASED (not owned by Seller). Contact the provider/vendor for more information (e.g., water treatment systems, propane tanks, satellite dishes and security systems): _____

(C) EXCLUDED fixtures and items: _____

---

**8. MORTGAGE CONTINGENCY (1-10)**

☒ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties may include an appraisal contingency.

☐ ELECTED.

(A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| First Mortgage on the Property | | Second Mortgage on the Property | |
|---|---|---|---|
| Loan/Amount $ | | Loan/Amount $ | |
| Minimum Term | years | Minimum Term | years |
| Type of mortgage: | | Type of mortgage: | |
| Loan-To-Value (LTV) ratio: | % | Loan-To-Value (LTV) ratio: | % |
| For non-FHA/VA loans LTV ratio not to exceed | % | For non-FHA/VA loans LTV ratio not to exceed | % |
| Mortgage lender: | | Mortgage lender: | |
| Interest rate | % | Interest rate | % |
| ...however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of _____%. | | ...however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of _____%. | |
| Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____% (0% if not specified) of the mortgage loan. | | Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____% (0% if not specified) of the mortgage loan. | |

(B) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee the interest rate(s) and fee(s) at or below the maximum levels stated. If lender(s) gives Buyer the right to lock in the interest rate(s), Buyer will do so at least _____ days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and as permitted by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to the Buyer and/or the mortgage lender(s) to assist in the mortgage loan process.

(C) Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed, written mortgage application (including payment for and ordering of appraisal and credit reports without delay, at the time required by lender(s)) for the mortgage terms and to the mortgage lender(s) identified in Paragraph 8(A), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any, otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process.

(D) Buyer will be in default of this Agreement if Buyer furnishes false information to anyone concerning Buyer's financial and/or employment status, fails to cooperate in good faith with processing the mortgage loan application (including delay of the appraisal), fails to lock in interest rate(s) as stated in Paragraph 8(B), or otherwise causes the lender to reject, refuse to approve or issue a mortgage loan commitment.

(E) 1. Mortgage Commitment Date: **NA** _____ Upon receiving a mortgage commitment, Buyer will promptly deliver a copy of the commitment to Seller.

2. If Seller does not receive a copy of the mortgage commitment(s) by the Mortgage Commitment Date, Seller may terminate this Agreement by written notice to Buyer. Seller's right to terminate continues until Buyer delivers a mortgage commitment to Seller. Until Seller terminates this Agreement, Buyer is obligated to make a good-faith effort to obtain mortgage financing.

3. Seller may terminate this Agreement by written notice to Buyer after the Mortgage Commitment Date if the mortgage commitment:

a. Does not satisfy the terms of Paragraph 8(A), OR

b. Contains any condition not specified in this Agreement (e.g., the Buyer must settle on another property, an appraisal must be received by the lender, or the mortgage commitment is not valid through the Settlement Date) that is not satisfied and/or removed in writing by the mortgage lender(s) within _____7_____ DAYS after the Mortgage Commitment Date in Paragraph 8(E)(1), or any extension thereof, other than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance; confirming employment).

4. If this Agreement is terminated pursuant to Paragraph 8(E)(2) or (3), or the mortgage loan(s) is not obtained for settlement, all deposit monies will be returned to Buyer according to the terms of Paragraph 23 and this Agreement will be VOID. Buyer will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender(s).

---

Buyer Initials: _DB_ / _DB_                ASR 3 of 11                Seller Initials: _____ / _____



(C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved    365        days after the Settlement Date stated in Paragraph 4(A), or any written extensions thereof, the Broker holding the deposit monies will, within 30 days of receipt of Buyer's or Seller's written request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the subject of litigation. If Broker has received verifiable written notice of litigation prior to the receipt of Buyer's request for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement between Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation for any portion of the deposit monies prior to any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties maintain their legal rights to pursue litigation even after a distribution is made.

(D) Buyer and Seller agree that Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 23 or Pennsylvania law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit monies, the attorney's fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.

(E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
    1. Fail to make any additional payments as specified in Paragraph(s), OR
    2. Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's legal or financial status, OR
    3. Violate or fail to fulfill and perform any other terms or conditions of this Agreement.

(F) Unless otherwise specified in Paragraph 23(C), Seller may elect to retain those sums paid by Buyer, including deposit monies:
    1. On account of purchase price, OR
    2. As monies to be applied to Seller's damages, OR
    3. As liquidated damages for such default.

(C) ☑ SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED DAMAGES.

(H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 23(F) or (G), Buyer and Seller are released from further liability or obligation and this Agreement is VOID.

25. RELEASE (9-05)
Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and all claims, losses or demands, including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

26. REAL ESTATE RECOVERY FUND (9-05)
A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who has been unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658 or (800) 822-2113 (within Pennsylvania) and (717) 783-4854 (outside Pennsylvania).

27. COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)
Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be satisfied by communication/delivery to the Broker for Buyer, if any, except for documents required to be delivered pursuant to Paragraph 15. If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or allows communication/delivery to a Seller, that provision shall be satisfied only by communication/delivery to the Broker for Seller, if any. If there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the Seller, unless otherwise agreed to by the parties.

28. SPECIAL CLAUSES (1-10)
(A) The following are part of this Agreement if checked:
    ☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
    ☐ Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSP-CM)
    ☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SOP)
    ☐ Settlement of Other Property Contingency Addendum (PAR Form SHS)
    ☐ Short Sale Addendum to Agreement of Sale (PAR Form ACA)
    ☐ Appraisal Contingency Addendum (PAR Form AC)

24. MEDIATION (1-10)
Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies, to mediation. Mediation fees, if any, will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation system offered or endorsed by the local Association of REALTORS®. Mediation fees, if any, will be divided equally among the parties and will be paid before the mediation conference. This mediation process must be concluded before any party to the dispute may initiate legal proceedings in any courtroom, with the exception of filing a summons if it is necessary to stop any statute of limitations from expiring. Any agreement reached through mediation and signed by the parties will be binding (see Notice Regarding Mediation). Any agreement to mediate disputes or claims arising from this Agreement will survive settlement.

Buyer Initials: _PA_ / _PA_        ASR 10 of 11        Seller Initials: _____ / _____

Sale Contingent on Final Approval from Funding Source within 48 hours of sellers acceptance

604  (B) Additional Terms:
605
606
607
608
609
610
611
612
613
614
615
616
617
618
619
620
521  Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

522  This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and which coun-
623  terparts together shall constitute one and the same Agreement of the Parties.

624  NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT. Parties to this transaction are
625  advised to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

626  Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures
627  of all parties, constitutes acceptance by the parties.

528  ___/___    Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code
529          §35.336.

530  ___/___    Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

531  ___/___    Buyer has read and understands the notices and explanatory information in this Agreement.

532  ___/___    Buyer has received a Seller's Property Disclosure Statement before signing this Agreement, if required by law
533          (see Information Regarding the Real Estate Seller Disclosure Law).

534  ___/___    Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit
535          money) before signing this Agreement.

536  ___/___    Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale, and
537          the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978).

638  BUYER _____    DATE: 1/29/2018

539  BUYER _____    DATE 1/29/2018

540  BUYER _____    DATE 1/29/2018

641  Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code § 35.336.
642  Seller has received a statement of Seller's estimated closing costs before signing this Agreement.
643  Seller has read and understands the notices and explanatory information in this Agreement.

644  SELLER _____    DATE _____

645  SELLER _____    DATE _____

646  SELLER _____    DATE _____

